Owatonna Metal Products Company, Appellee, v. H. D. Hudson Manufacturing Company, Appellant.

Gen. No. 37,975.

Opinion filed December 30, 1935. Rehearing denied and opinion slightly modified January 21, 1936.

ARTHUR A. BASSE, of Chicago, for appellant.

MARCUS L. SILVER, of Chicago, for appellee.

MR. JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

This appeal seeks to reverse a judgment for $2,194.14 entered against defendant, H. D. Hudson Manufactur-

ing Company, in a contract action brought by plaintiff for the recovery of the par value of two certificates and attached dividend coupons issued by defendant. The suit was originally brought by the King Ventilator Company, but subsequently leave was granted to amend by substituting the Owatonna Metal Products Company as party plaintiff.

Plaintiff's statement of claim alleged substantially that it was the owner of 20 shares of $100 par value preferred stock of defendant, a Minnesota corporation, represented by two certificates, Nos. 2010 and 2011; that, according to the terms of said certificates, the par value of the preferred stock became due and payable to the owner thereof when all dividend coupons attached thereto had fallen due and been paid; that the last coupon on certificate No. 2010 became due May 1, 1932, and the final coupon on certificate No. 2011 became due May 1, 1933, but that said coupons were not paid; that there was also a coupon due May 1, 1932, on certificate No. 2011 which was unpaid and that all such coupons were for $60 each; and that both certificates read as follows:

"Incorporated Under the
Laws of the
State of Minnesota.

Shares
$100.00     Certificate of Preferred Stock     10
                     Capital $2,000,000.          shares

"THE HUDSON MANUFACTURING COMPANY
Minneapolis, Minn.

"This certifies that Owatonna Metal Products Co. is the owner of Ten Shares of the Preferred Capital Stock of the Hudson Manufacturing Company, transferable only on the books of the corporation in person

or by attorney on surrender of this Certificate. Subject to the following conditions:

"This certificate entitles the holder to an annual dividend of 6 per cent upon presentment in succession of the dividend coupons hereto attached.

"This preferred stock shall, at the option of the corporation, be subject to redemption on the First day of May, 1932, or if not so redeemed its time of redemption may be extended on the same terms, from year to year until all the attached coupons shall have fallen due and been paid.

"The holder of this preferred stock shall have no vote at stockholders' meetings, and is not entitled to notice of such meetings, and shall not participate in the profits of the Corporation beyond the amount herein mentioned as payable according to the terms of the attached dividend coupons.

"IN WITNESS WHEREOF the duly authorized officers of the Corporation have hereunto set their hands and names and caused the corporate seal to be affixed this 18th day of October, 1928.

H. D. Hudson,
President,
(Corporate Seal)   Carl J. Siebold,
Secretary.''

The dividend coupon attached to certificate No. 2010 was as follows:

"Pfd. Stock No. 2010 $1000 Dividend Coupon No. 4.

THE HUDSON MANUFACTURING COMPANY will pay to OWATONNA METAL PRODUCTS Co. at their office in Minneapolis, Minn., on the 1st day of May, 1932, SIXTY——— Dollars being one year's dividend on the above named Preferred Stock Certificate, computed from Jan. 1st to Dec. 31st in each year.

H. H. HUDSON,
Pres.-Treas.''

The dividend coupons attached to certificate No. 2011 were in the same form, varying only as to the certificate number and as to the dates of payment and the period for which the dividend was to be paid.

Defendant's final amended affidavit of merits was filed July 23, 1934, and its material allegations pertinent to this appeal are that plaintiff's certificate represented part of an outstanding issue of preferred shares of stock of defendant corporation, aggregating $333,640, all of the same class and entitled to the same rights and privileges; that in addition to the shares of preferred stock, as above set forth, defendant had outstanding when the instant suit was filed shares of common stock of the aggregate par value of $923,370; that this outstanding preferred and common stock represented the total outstanding capital stock of defendant and that it had no other class or classes of stock; that the rights and privileges of the holders of the preferred stock were fully set forth in the articles of incorporation of defendant; that, in substance, such articles provided that the holders of preferred stock shall receive from the net earnings or surplus of defendant cumulative dividends before the payment of dividends on common stock, and in case of dissolution or liquidation the assets of the corporation, whether capital assets or earnings, shall be distributed to the holders of the preferred stock to the full extent of its par value and unpaid cumulative dividends before any distribution is made to the holders of common stock, that the holders of preferred stock shall have no voting rights or power unless the defendant fails to pay dividends on such preferred stock for a period of three successive years, in which event the holders of the preferred stock shall be entitled to vote, and that the preferred stock may be redeemed at the option of the defendant corporation; that plaintiff's preferred stock was not issued for any money lent or paid to defend-

ant, but was issued in lieu of and in exchange for shares of preferred stock previously issued and outstanding; that the shares of stock which were previously issued to plaintiff, and for which the shares of preferred stock in question were exchanged, were not issued for any money lent or paid to defendant, but were issued pursuant to a verbal agreement between plaintiff and defendant whereby plaintiff agreed to and did turn over to plaintiff certain merchandise and a going business with the good will of same; that when this agreement was made it was specifically understood that plaintiff was receiving shares of stock and was not receiving notes or certificates of indebtedness; and that plaintiff and defendant at all times treated and considered the relationship between them as that of stockholder and corporation and not that of creditor and debtor.

October 22, 1934, the trial court overruled plaintiff's motion to strike defendant's amended affidavit of merits from the files and entered the following order:

"Now comes the plaintiff in this cause, and moves the Court for judgment versus defendant, on pleadings, and the Court being fully advised in the premises sustains said motion.

"This cause coming on for further proceedings herein, it is considered by the Court that the plaintiff have judgment on the pleadings herein, and that the plaintiff have and recover of and from the defendant, TWENTY ONE HUNDRED NINETY FOUR AND 14/100 Dollars ($2,194.14). . . ."

Defendant contends that the certificates in question represent shares of stock and that they do not contain any agreement on its part to redeem the shares, but merely give it an option to do so; that the certificates must be considered in connection with the provisions of its Articles of Incorporation; that, even if there were an agreement to redeem the shares, the corpora-

tion could not be required to redeem them nor to pay dividends thereon when to do so would impair the rights of creditors; and that the redemption of plaintiff's stock and the payment of dividends thereon would impair the rights of creditors.

Plaintiff's theory is that it is a creditor and not a stockholder of the plaintiff corporation because of the peculiar character, form and condition of its certificates and the dividend coupons attached thereto; and that, even though it is held to be a preferred stockholder and not a creditor, nevertheless the defendant agreed to redeem the certificates which it holds at a definite ascertainable date, and as between the stockholder and the corporation, the latter must redeem unless it is properly alleged and shown that to do so would impair the rights of creditors or that the corporation is prohibited by statute from so redeeming.

Whether or not the holder of a particular instrument or certificate is to be regarded as a stockholder or creditor is a question of interpretation and depends upon the terms of his contract as evidenced by such instrument and the corporate charter. (Fletcher Cyclopedia Corporations, Permanent Edition, vol. 11, sec. 5294, p. 718.)

The question as to whether the holder of a certificate issued by a corporation is a member of such corporation or whether the certificate is simply evidence of a debt due by the corporation to the holder, is one that depends upon the peculiar facts of each case. (*Savannah Real Estate, Loan & Bldg. Co. v. Silverberg,* 108 Ga. 281.) The contract which the stockholders intended to make in issuing the stock in question must be determined from the language of the certificate of stock itself taken in connection with the Articles of Incorporation. (*Spencer v. Smith,* 201 Fed. 647.)

The distinctive and peculiar facts upon which plaintiff relies in urging that its certificates should be con-

strued to constitute plaintiff a creditor rather than a stockholder are (1) that one of the certificates contains the provision that "this preferred stock shall at the option of the corporation be subject to redemption on the first day of May, 1932, or if not so redeemed its time of redemption may be extended on the same terms from year to year until all the attached coupons shall have fallen due and been paid," and the other certificate contained the same provision except that it was first subject to redemption May 1, 1933; (2) that attached to each of the certificates were a limited number of dividend coupons, each containing an unqualified promise to pay $60 at a definite date; (3) that the certificates contained the further provision that the holder of same "shall not participate in the profits of the corporation beyond the amounts mentioned as payable according to the terms of the attached dividend coupons"; (4) that dividends were only to be paid to the holder of the certificates "upon presentation, in succession, of the dividend coupons thereto attached"; and (5) that "the holder of this preferred stock shall have no vote at stockholders' meetings." Rather than containing any undertaking or obligation by the defendant to redeem the certificates at a definite date, we think the contrary is true. On plaintiff's motion to strike defendant's affidavit of merits for insufficiency all the well pleaded allegations therein were admitted. Its affidavit of merits shows that the shares of stock evidenced by plaintiff's certificates were a part of the only issue of preferred stock of defendant corporation outstanding. The true character and effect of the instruments upon which plaintiff predicates this action must be determined in the light of defendant's articles of incorporation, contained in its affidavit of merits, which set forth the rights, preferences and privileges of holders of its preferred stock. Such articles provide, in substance, that the holders of preferred stock shall

receive from the net earnings or surplus of the corporation cumulative dividends at a rate not to exceed seven per cent per year before the payment of dividends to the holders of common stock, and in case of dissolution or liquidation, the assets, whether consisting of capital assets or cumulative earnings, shall be distributed to the holders of the preferred stock to the full extent of the par value of such shares of stock and unpaid cumulative dividends thereon before any distribution is made to the holders of common stock; that the holders of preferred stock shall have no voting power unless the corporation fails to pay dividends on the preferred stock for a period of three successive years, in which event such holders of preferred stock shall be entitled to vote; and that the stock may be redeemed at the option of the corporation.

We find no language in plaintiff's certificates that could possibly lead to an interpretation that they were other than certificates of preferred shares of stock. They contain no evidence of a promise or obligation to pay plaintiff money, but do contain merely an option to redeem, which defendant may or may not exercise. We find nothing in the terms of the certificates as to the number of dividend coupons or as to their time, method or manner of payment that could possibly alter the character and effect of the certificates. Regardless of the number of dividend coupons originally attached to the respective certificates, and regardless of any limitation therein as to the number of dividends payable thereon, under the articles of incorporation plaintiff must share in any dividend declared on the preferred stock of the corporation. The limitation in the certificates of the holder's right to vote is generally held not to affect such instruments' character as stock certificates.

In *Hazel Atlas Glass Co. v. VanDyk & Reeves,* 8 F. (2d) 716, where a preferred stockholder attempted to assert a claim against the corporation as a creditor

under circumstances similar to but even stronger than those that exist here, the court said at pp. 719, 720-22:

"We can see nothing in any of these provisions which in any way alters the nature of this preferred stock and makes Van Dyk a creditor of the corporation, and not a stockholder. As he cannot be, by virtue of his ownership of the stock, both stockholder and creditor, but must be one or the other, we think he must be the former, for we cannot see any legal justification for holding that he is the corporation's creditor.

"One 'cannot be both creditor, and debtor, by virtue of his ownership of stock.' *Warren v. King,* 108 U. S. 389, 399, 2 S. Ct. 789, 798, 27 L. Ed. 769. He is either the one or the other; and if it is claimed that one who holds 'preferred' stock is not a stockholder, but is instead a creditor, the claim must 'rest on clear and not doubtful language.' *Warren v. King, supra,* page 398, 2 S. Ct. 797. . . .

"In Cook on Corporations (7th Ed.) vol. 1, sec. 271, that distinguished commentator remarks: 'Formerly it was a matter of doubt and discussion whether or not a preferred stockholder had any rights as a creditor of the company, or was confined to his rights as a stockholder. The law is now clearly settled that a preferred stockholder is not a corporate creditor.'

. "The general rule is that a holder of preferred stock, even though the preferred dividend is guaranteed, is not regarded as a creditor of the corporation, and entitled as such to share with the other creditors in the distribution of the assets. He is, like the holders of the common stock, merely a stockholder, but with this difference, that he is entitled to priority of payment out of the assets which remain after all debts are paid; the holders of the common stock sharing in such assets as are left. . . .

"In the instant case the agreement between the corporation and the holder of the stock certificate provided that the holder of such stock should be entitled

to 'cumulative dividends.' But this agreement that dividends should be 'cumulative' has no bearing on the question now before us. For in any case unless a contrary intention appears, dividends on preferred stock are cumulative, and arrearages in one year are payable in subsequent years, when there are sufficient profits, before dividends can be paid on the common ·stock.

. . . . .

"The rights which the holder of preferred stock has depend upon his contract with the corporation. The rule is that preferred stockholders are entitled to vote the same as the common stockholders, unless by the terms of its issue the voting power has been expressly withheld. But the fact that Van Dyk, as the holder of the preferred stock, was to have no right to vote it, except in the event that three dividends should remain unpaid, and thereupon should have equal voting rights with the holders of the common stock until all dividends on the preferred stock were paid, is a matter of no consequence, so far as the legal question herein involved is concerned. It does not change Van Dyk's status from that of a preferred stockholder into that of a creditor. *Shaffer v. McCulloch,* 192 F. 801, 804, 113 C. C. A. 535. The surrender by a preferred stockholder of the right to vote does not make him a creditor. *Hamlin v. Toledo, St. Louis & Kansas City R. Co.,* 78 F. 664, 671, 24 C. C. A. 271, 36 L. R. A. 826.

. . . . .

"In Machen on Corporations, vol. 1, sec. 541, it is stated that preferred shareholders are members of the company, and not creditors, and the author goes on in section 542, to point out some of the circumstances which are insufficient to confer on such shareholders the rights of creditors. He says, among other things:

" 'Nor is the fact that the preferred stockholders do not possess the right of voting at shareholders'

meetings sufficient evidence that they should be deemed creditors rather than members of the corporation. Indeed, even if payment of the preferred dividend is guaranteed by the company, the preferred shareholders are entitled to nothing except out of net profits; the guaranty will be construed to apply only to payment out of any funds legally available for dividends. . . .' "

The transactions in and by which the certificates were issued and delivered to plaintiff, as shown by the affidavit of merits, did not result in the creation of a debt. The circumstances of their issue and their purpose, and the articles pursuant to which they were issued, show conclusively that the parties contemplated the issue and delivery to plaintiff of certificates of preferred shares of stock and not certificates of indebtedness.

If defendant became a debtor to plaintiff it must be because of obligations which defendant corporation assumed toward plaintiff in the issuance to him of the preferred stock, which made him not a stockholder but a creditor. There is nothing in plaintiff's contract with the defendant or in its certificates which takes this case out of the general rule that one who holds preferred stock is a stockholder and not a creditor of the corporation. (*Hazel Atlas Glass Co. v. Van Dyk & Reeves, supra.*)

Holding as we do that plaintiff's certificates did not constitute it a creditor and that they cannot be construed as containing any definite obligation to redeem the preferred stock which they evidenced, it is unnecessary to consider whether their redemption would impair the rights of creditors and allow plaintiffs an unfair and illegal preference over the other preferred stockholders.

Defendant acquiesced in the trial court's ruling sustaining plaintiff's motion that the cause be heard on

the pleadings alone and it necessarily follows that the pleadings present the sole basis for our determination of the issues. The last amended affidavit of merits presented a defense that was not only meritorious but that was a complete bar to plaintiff's recovery. Inasmuch as plaintiff's claim was predicated solely upon its certificates of preferred stock and the attached dividend coupons, it would serve no good purpose to remand this cause. The judgment of the municipal court is therefore reversed.

*Reversed.*

SCANLAN, P. J., and FRIEND, J., concur.